IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| JOSE MONTES, JR., ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, <br><br>　　*Plaintiffs,* <br><br>V. <br><br>TIMEKEEPERS, INC., TIER ONE SECURITY, INC., RABBIT EAR MANAGEMENT, INC., AND SHAWN FLUITT, <br><br>　　*Defendants.* | § § § § § § § § § § § § § § § <br><br>Civ. No. 5:14-cv-193 |

## PLAINTIFF'S MOTION TO CONDITIONALLY CERTIFY A COLLECTIVE ACTION AND TO ISSUE NOTICE

Plaintiff Jose Montes, Jr., on behalf of himself and all other similarly situated ("Plaintiff"), files this Motion to Conditionally Certify a Collective Action and to Issue Notice, and in support thereof, states as follows:

### I. SUMMARY

Plaintiff is a former gate guard/security officer[1] for Defendants Timekeepers, Inc., Tier One Security, Inc., Rabbit Ear Management, Inc., and Shawn R. Fluitt (collectively, "Defendants").[2] Plaintiff is pursuing this action for violations of the Fair Labor Standards Act ("FLSA"), on behalf of himself and all other similarly-situated employees. Plaintiff alleges that Defendants violated the FLSA by misclassifying their gate guards/security officers as

---

[1] Defendants' written policies and procedures use "gate guards" and "security officers" interchangeably. Therefore, to avoid any confusion, Plaintiff uses both terms throughout this Motion.
[2] Defendants' written policies and procedures demonstrate that Timekeepers, Inc., Tier One Security, Inc., and Rabbit Ear Management, Inc. (the "Corporate Defendants") are all joint employers of the gate guards/security officers. For example, the job description for field supervisors attached as Attachment A to Exhibit 1 is issued by Rabbit Ear Management, Inc., for "Tier One Projects." As demonstrated by Exhibit 2, Defendants Timekeepers and Tier One have a joint set of policies and procedures for the hiring of gate guards/security officers. Therefore, Plaintiff has filed suit against all three Corporate Defendants as joint employers. Individual Defendant Shawn Fluitt is, as alleged in Plaintiff's complaint, the corporate owner of all three Corporate Defendants. (DKT. NO. 1 ¶ 6).

independent contractors and failing to pay them time-and-a-half of their regular rate for all hours worked over forty in a workweek. Defendants dispute liability and contend that they properly classified Plaintiff and the putative class members as independent contractors not subject to the requirements of the FLSA. (DKT. NOS. 13-16 AT P. 3, DEFENDANTS' ANSWERS).

Plaintiff now seeks an order from the Court conditionally certifying a collective action under 29 U.S.C. § 216, and authorizing Plaintiff to issue "opt-in" notices to similarly-situated employees who are or were classified as independent contractors during the three years preceding the filing of this action, as they are all owed damages based on Defendants' violation of the FLSA. Accordingly, the sole question presented by this motion is: Should other gate guards/security officers who were classified as independent contractors be given notice and an opportunity to opt-in to this case? Because Plaintiff and the putative class members are all victims of Defendants' classification policy, the answer under the law is "yes."

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Defendants are companies that provide security and monitoring services, primarily to the oil and gas industry. (EXHIBIT 1, MONTES AFFIDAVIT ¶ 2). Defendants hire gate guards/security officers, like Plaintiff, to check vehicles in and out of the work sites to which they are assigned by Defendants. (EXHIBIT 1, MONTES AFFIDAVIT ¶¶ 3, 5). Gate guards/security officers, like Plaintiff, routinely work in excess of forty hours per week. Specifically, when Plaintiff worked as a gate guard/security officer, he worked a minimum of four twelve-hour shifts per week, and after he was promoted to a supervisor, Plaintiff observed other gate guards/security officer work a similar schedule. (EXHIBIT 1, MONTES AFFIDAVIT ¶¶ 3, 5, 8; ATTACHMENT B, SCHEDULE). However, Defendants do not pay their gate guards/security officers overtime for the hours they

work over forty; instead, Defendants pay gate guards/security officers a flat daily rate of approximately $300.00. (EXHIBIT 1, MONTES AFFIDAVIT ¶ 5).

Defendants have a uniform policy of classifying their gate guards/security officers as independent contractors. (EXHIBIT 1, MONTES AFFIDAVIT ¶¶ 4-5). Notably, Defendants' policy of classifying gate guards/security officers as independent contractors is memorialized in their "Contractor Application," which they require all gate guards/security officers to sign. (EXHIBIT 1, MONTES AFFIDAVIT ¶ 9; ATTACHMENT C, APPLICATION). In relevant part, Defendants' Contractor Application requires that gate guard/security officer applicants check a box which states, "Please check if you understand this is a 1099 contact [sic] position." (EXHIBIT 1, MONTES AFFIDAVIT ¶ 9; ATTACHMENT C AT 2, APPLICATION). Furthermore, Defendants' website specifically describes the gate guard/security officer position as a "Contractor Opportunity." (EXHIBIT 2, WEBSITE EXCERPTS).

Moreover, Defendants set the work hours and work locations for all of their gate guards/security officers. (EXHIBIT 1, MONTES AFFIDAVIT ¶¶ 5-6, 8; ATTACHMENT B, SCHEDULE). Defendants also train gate guards/security officers in safety and in Defendants' "accepted practices in field/ranch security procedures." (EXHIBIT 1, MONTES AFFIDAVIT ¶ 6; ATTACHMENT A, FIELD SUPERVISOR JOB DESCRIPTION). Defendants supervise gate guards/security officers on a regular basis and meet with gate guards/security officers "to evaluate performance." (EXHIBIT 1, ¶ 6; ATTACHMENT A). Defendants also "prepare payroll" for gate guards/security officers and are permitted to immediately terminate gate guards/security officers whose "behavior and/or performance justifies such action." (EXHIBIT 1, ¶ 6; ATTACHMENT A).

## III. ARGUMENTS AND AUTHORITIES

In reviewing a Motion for Collective Action Certification, "the Court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Brasfield v. Source Broadband Servs., LLC*, 257 F.R.D. 641, 642 (W.D. Tenn. 2009); *see also Eggelston v. Sawyer Sportsbar, Inc.*, Civil Action No. 4:09-3529, 2010 WL 2639897, at *3 (S.D. Tex. June 28, 2013) (stating that court does not consider merits at this stage). Collective actions under the FLSA are generally favored because such actions reduce litigation costs for the individual plaintiffs and create judicial efficiency by resolving in one proceeding "common issues of law and fact arising from the same alleged . . . activity." *Ryan v. Staff Care, Inc.*, 497 F. Supp. 2d 820, 823 (N.D. Tex. 2007) (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)); *see also Roussel v. Brinker Intern., Inc.*, No. H-05-3733, 2008 WL 2714079, at *24 (S.D. Tex. July 9, 2008) (stating the remedial nature of the FLSA and § 216 "militate[s] strongly in favor of allowing cases to proceed collectively."). Consequently, the standard for granting conditional certification of a FLSA case is a lenient one, and Plaintiff more than satisfies that lenient standard.

**A. FLSA Collective Actions Are Certified Under A Lenient Standard.**

The FLSA requires covered employers to pay non-exempt employees overtime for hours they have worked in excess of defined maximum hours. 29 U.S.C. § 207(a). The FLSA also creates a cause of action for employees against employers who have violated the overtime compensation requirements:

> An action . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).

"A representative action brought pursuant to this provision follows an 'opt-in' rather than an 'opt-out' procedure. *Villatoro v. Kim Son Rest., L.P.*, 286 F. Supp. 2d 807, 811 (S.D. Tex. 2003) (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995)). District courts have discretion in deciding whether and how to award "timely, accurate, and informative" notice to prospective plaintiffs. *See Hoffmann-La Roche Inc.*, 493 U.S. at 172.

Courts presently follow two different approaches in determining whether to authorize notice to employees of their right to join a collective action suit under FLSA Section 216(b). *See Ryan*, 497 F. Supp. 2d at 823. The first approach was developed in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987), and involves a two-step process to determine whether employees are similarly situated. *See Mooney*, 54 F.3d at 1213-14 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90, 90-91. The second approach follows *Shusan v. Univ. of Colorado*, 132 F.R.D. 263 (D. Colo. 1990), and treats collective action authorization as coextensive with Rule 23 class certification. *See Ryan*, 497 F. Supp. 2d at 824.

The Fifth Circuit has not yet "ruled on how district courts should determine whether plaintiffs are sufficiently 'similarly situated' to advance their claims together in a single § 216(b) action." *Acevedo v. Allsup's Convenience Stores Inc.*, 600 F.3d 516, 518-19 (5th Cir. 2010). Despite this uncertainty, federal courts in the Fifth Circuit follow the *Lusardi* approach rather than the *Shushan* approach. *See e.g., Marshall v. EyeMasters of Texas, LTD.*, 272 F.R.D. 447, 449 (N.D. Tex. 2011); *Clark v. City of Fort Worth*, No. 4:10-CV-519-A, 2011 WL 121896, at *2 (N.D. Tex. Jan. 11, 2011); *Ryan*, 497 F. Supp. 2d at 823; *Aguilar v. Complete Landsculpture, Inc.*, No. 3:04-CV-0776-D, 2004 WL 2293842, at *1 (N.D. Tex. Oct. 7, 2004); *Tolentino*, 716 F.Supp.2d at 646, *Maynor v. Dow Chem. Co.*, Civil Action No. G-07-0504, 2008 WL 2220394,

at *4 (S.D. Tex. May 28, 2008); *Villatoro*, 286 F. Supp. 2d at 810. This is consistent with the Fifth Circuit's conclusion in *LaChapelle v. Owens-Illinois, Inc.*, 513 F.2d 286 (5th Cir. 1975) that "[t]here is a fundamental, irreconcilable difference between the class action described by [Federal Rule of Civil Procedure] 23 and that provided for by FLSA § 16(b)," namely the "opt out" procedure for class members under Rule 23 as contrasted with the opt in" procedure under Section 216(b). 513 F.2d 286, 288 (5th Cir. 1975). Consequently, the Fifth Circuit has referred to the two-step process as the typical manner in which collective actions proceed. *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008). Accordingly, this Court should use the *Lusardi* approach.

The first step of the *Lusardi* analysis is the "notice stage." *See Mooney*, 54 F.3d at 1214. During the notice stage, the court "makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members." *Id*. Because the court has minimal evidence, this determination is made using a fairly lenient standard and typically results in 'conditional certification' of a representative class. *Id*. If the district court conditionally certifies the class, putative class members are given notice and the opportunity to opt-in. *Id.* at 1214. At this stage, courts generally "require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan infected by discrimination." *Id*. at n.8.

Generally, a plaintiff must show that: "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant aspects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Morales v. Than Hung Corp.*, Civil Action No. 4:08-2795, 2009 WL 2524601, at *2 (S.D. Tex. Aug. 14, 2009). This standard is "less stringent" than the Rule 23

class action requirements. *See Ryan*, 497 F. Supp. 2d at 825 (citing *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)); *Cantu v. Vitol, Inc.*, Civil Action No. H-09-0576, 2009 WL 5195918, at *3 (S.D. Tex. Dec. 21, 2009); *Prater v. Commerce Equities Mgmt. Co.*, No. H-07-2349, 2007 WL 4146714, at *4 (S.D. Tex. Nov. 19, 2007) (citing cases).

A court may deny conditional certification and notice "only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Ryan*, 497 F. Supp. 2d at 823. However, the court "need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated." *Maynor v. Dow Chem. Co.*, 2008 U.S. Dist. LEXIS 42488, at *20 (S.D. Tex. May 28, 2008). The "remedial nature of the FLSA and § 216 militate strongly in favor of allowing cases to proceed collectively." *Roussell v. Brinker Int'l, Inc.*, 2008 U.S. Dist. LEXIS 52568, at *96 (S.D. Tex. July 9, 2008). If the court conditionally certifies the class during the notice stage, the action "proceeds as a representative action throughout discovery." *See Mooney*, 54 F.3d at 1214. Notification to prospective claimants issues when a court conditionally certifies the case as a collective action suit under Section 216(b), and the court "may exercise its discretion in defining the class of plaintiffs who will receive notice and how they will be notified." *Id.*

*Lusardi's* second step is triggered when a defendant files a motion for decertification, after completion of discovery. *Id.* "At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives – *i.e.*, the original plaintiffs – proceed to trial on their individual claims. *Id.*

**B. Plaintiff More Than Satisfies the Lenient Legal Standard for Conditional Certification of a FLSA Collective Action.**

This Court must determine whether Plaintiff has satisfied his burden to demonstrate that conditional certification is proper. To facilitate the analysis, the Court evaluates the request for conditional certification in light of the three factors described above. *See Mahoney*, 2011 WL 4458513, at *3, *Morales*, 2009 WL 2524601, at *2. As set forth below, Plaintiff easily satisfies the lenient standard for conditional certification.

**1. First, There Is A Reasonable Basis for Crediting the Assertion That Aggrieved Individuals Exist.**

To satisfy this requirement, Plaintiff "need only show that it is reasonable to believe that there are other aggrieved employees who were subject to an allegedly unlawful policy or plan." *Villarreal*, 751 F. Supp. 2d at 916-17. Plaintiff easily does so.

In this case, Plaintiff has stated a cognizable claim under Section 207 of the FLSA, and Plaintiff has provided a declaration that describes the facts that Defendants classify their gate guards/security officers as independent contractors and do not pay their gate guards/security officers time-and-a-half of their regular rate for hours worked over forty in a workweek. (Ex. 1, MONTES DECLARATION, ¶¶ 5-8). Defendants' job application for gate guards/security officers is called a "Contractor Application" and requires applicants to check a box which states, "Please check if you understand this is a 1099 contact [sic] position." (Ex. 1, MONTES DECLARATION, ¶ 9; ATTACHMENT C). Defendants' job description for its Field Supervisor position states that Field Supervisors are responsible for "[s]upervis[ing] the activities of contractors" who "maintain security and safety of people and property"—in other words, the gate guards/security officers. (Ex. 1, MONTES DECLARATION, ¶ 5; ATTACHMENT A). Defendants' website describing the gate guards/security officers job specifically describes it as a "contractor opportunit[y]." (Ex. 2,

WEBSITE EXCERPTS). Moreover, Defendants' own answers in this lawsuit demonstrate that they do not pay gate guards/security officers time-and-a-half for overtime hours because they classify gate guards/security officers as independent contractors. (DKT. NOS. 13-16 AT P. 3, DEFENDANTS' ANSWERS). Evidence and declarations such as these "establish that the potential class members had (or have) the same job requirements and pay provisions as the named Plaintiffs." *Ryan*, 497 F. Supp. 2d at 825.

In light of these declarations, the Court may easily conclude that Plaintiff has shown that it is reasonable to believe that there are other aggrieved employees. *See, e.g., Prater v. Commerce Equities Mgmt. Co., Inc.*, Civil Action No. H-07-2349, 2007 WL 4146714, at *5 (S.D. Tex. 2007) (reviewing allegations and affidavits in assessing first factor and certifying a class); *Davis*, 2012 WL 163941, at *6 (relying on similar evidence to conclude this requirement was satisfied); *Villarreal*, 751 F. Supp. 2d at 916-18 (relying on similar affidavits to conclude that the plaintiffs had fulfilled this requirement).

### 2. Second, Those Other Aggrieved Individuals Are Similarly Situated To The Plaintiffs in Relevant Respects Given the Claims Asserted.

The potential class plaintiffs are considered "similarly situated" to the named plaintiff if they are "similarly situated" with respect to their job requirements and with regard to their pay provisions. The positions need not be identical, but similar. As Judge Lee Rosenthal stated, "[a] court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff and not from any generally applicable rule, policy, or practice." *McKnight*, 756 F. Supp. 2d at 801 (quoting *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005)). Plaintiff easily satisfies this test.

Defendants' job application for gate guards/security officers demonstrates that their gate guards/security officers are all subject to their "generally applicable rule, policy, or practice" to

classify gate guards/security officers as independent contractors and not pay them overtime for hours worked over forty per week. (Ex. 1, MONTES DECLARATION, ¶ 9; ATTACHMENT C). All gate guards/security officers are responsible for checking in and out all vehicles entering or exiting the work site on the vehicle log provided by Defendants. (Ex. 1, MONTES DECLARATION, ¶¶ 3, 5). Moreover, Defendants' decision to group its gate guards/security officers together and to classify them all as independent contractors establishes the similarity in the type and amount of work they perform. The gate guards/security officers thus are a cohesive and homogenous group that fit perfectly within the letter and spirit of the FLSA collective action. *See Dryer v. Baker Hughes Oilfield Operations, Inc.*, Civil Action No. H-08-1212, 2008 WL 5204149, at *2 (S.D. Tex. Dec. 11, 2008); *Johnson v. Big Lots Stores, Inc.*, Civil Action Nos. 04-3201, 05-6627, 2007 WL 5200224, at *9 (E.D. La. Aug. 21, 2007).

### 3. Third, It is Reasonable To Believe That Other Persons Want to Opt Into This Lawsuit.

"Many courts have determined that plaintiffs do not need to present evidence that potential opt-in plaintiffs desire to opt-in." *Walker v. Honghua America, LLC*, 870 F.Supp.2d 462, 471-72 (S.D. Tex. 2012). Similarly, Magistrate Johnson "agrees that a plaintiff need not present evidence at this stage of the third element, that aggrieved individuals actually want to opt in to the lawsuit." *See Villarreal v. St. Luke's Episcopal Hospital*, 751 F.Sup.2d 902, 915 (S.D. Tex. 2010). However, even if some showing of interest is required, it is satisfied if "at least a few individuals want to join" or there is evidence that "other individuals would likely seek to opt-in." *See Walker*, 870 F.Supp.2d at 472.

Here, one opt-in Plaintiff, Yolanda Garza, has filed a consent to join this lawsuit. (DKT. NO. 18, GARZA CONSENT TO JOIN). Plaintiff has stated that he "strongly suspects many of the other gate guards/security officers for Defendants would also be interested in joining this lawsuit

if they received notice and were given an opportunity to participate." (Ex. 1, MONTES DECLARATION, ¶ 10). Plaintiff has also provided a sample, representative schedule demonstrating that Defendants routinely schedule their gate guards/security officers to work more than forty hours per week. (Ex. 1, MONTES DECLARATION, ¶ 8; ATTACHMENT B). This schedule lists just some of Defendants' gate guards/security officers by name, demonstrating that there are numerous gate guards/security officers who are eligible to join this lawsuit. Moreover, another individual has filed a similar lawsuit in the Western District of Texas, which also alleges FLSA violations based on Defendants' independent contractor misclassification scheme for gate guards/security officers. *See Limon v. Timekeepers, Inc., et al.*, No. 5;15-cv-00143-RP (W.D. Tex. 2015). These Plaintiffs constitute a small number of the gate guards/security officers that were classified as independent contractors during the preceding three years. The number of opt-in Plaintiffs will no doubt increase if the Court grants this motion and notices are allowed to be sent to all eligible gate guards/security officers.

In conclusion, all three factors strongly militate in favor of granting Plaintiff's motion, conditionally certifying this action, and authorizing Plaintiff to issue notice of their opt-in rights to the other similarly-situated employees, so they too may claim the unpaid overtime that Defendants owe them.

### C. The Proposed Notice is Proper.

A proposed notice is provided with this motion as Exhibit 3 that complies with the rules applicable to notices in these types of cases, and is fair to both Plaintiffs and Defendants.

## IV. CONCLUSION

Plaintiff respectfully prays that the Court grant his motion to conditionally certify a collective action and to issue opt-in notices and consent forms to all gate guards/security officers

that were classified as independent contractors during the three years preceding the date this action was filed.

Plaintiff also seeks an order from the Court that Defendants produce to Plaintiff's counsel in a usable electronic format no later than seven days from the entry of the Court's order: the names, last known personal and residential addresses, last known residential and cell phone numbers, personal and work e-mail addresses, last four digits of their Social Security Number, and dates of work of all gate guards/security officers who were classified as independent contractors during the three years preceding the date the Court grants Plaintiff's Motion. Such information should be verified as complete and accurate by Defendants.[3] Finally, Plaintiff requests an order from the Court that Plaintiff's counsel may send the putative class members a reminder notice halfway through the opt-in period.[4]

Finally, Plaintiffs pray for all other relief to which they are just entitled.

---

[3] *See Davis*, 2012 WL 163941, *11 (requiring production of telephone numbers and other information); *Meyers*, 2010 2710676, at *4 (requiring production of last four digits of Social Security Numbers); *Tolentino*, 716 F.Supp.2d at 655-56 (ordering production of names, addresses, phone numbers, and e-mail addresses); *Beall v. Tyler Techs., Inc.*, No. Civ. A 2:08-cv-422, 2009 WL 1766141, at *4 (E.D. Tex. Jun 23, 2009) (requiring production of same types of information, including Social Security Numbers); *Eggleston v. Sawyer Sports Bar, Inc.*, Civil Action No. 4:09-3529, 2010 WL 2639897 (S.D. Tex. June 28, 2010) (requiring production of e-mail addresses).

[4] *See Oliver v. Aegis Communs. Group, Inc.*, 2008 U.S. Dist. LEXIS 112399 (N.D. Tex. Oct. 30, 2008) (permitting plaintiffs to send subsequent mailings of the notice); *see also Rhodes v. Truman Med. Ctr., Inc.*, 2014 U.S. Dist. LEXIS 133281, *11-12 (W.D. Mo. Sept. 23, 2014) (permitting reminder notice to be sent thirty days before the end of the opt in period to "help ensure that all putative Plaintiffs are provided an adequate opportunity to 'opt in' to the action."); *Hart v. U.S. Bank NA*, 2013 U.S. Dist. LEXIS 160147, *20 (D. Ariz. Nov. 8, 2013) (allowing plaintiff's counsel to send a single reminder notice during the opt-in period).

Respectfully submitted,

/s/ Lawrence Morales II
Lawrence Morales II
State Bar No. 24051077
Allison Sarah Hartry
State Bar No. 24083149
**THE MORALES FIRM, P.C.**
115 E. Travis, Suite 1530
San Antonio, Texas 78205
Telephone No. (210) 225-0811
Facsimile No. (210) 225-0821
lawrence@themoralesfirm.com
ahartry@themoralesfirm.com

*ATTORNEYS FOR PLAINTIFF*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 3, 2015, I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system, which will automatically send e-mail notification of such filing to admitted counsel of record:

Michael L. Holland
Inez McBride
Holland & Holland, LLC
North Frost Center
1250 N.E. Loop 410, Suite 808
San Antonio, Texas 78209

David W. Navarro
Hornberger, Fuller & Garza, Inc.
The Quarry Heights Building
7373 Broadway, Suite 300
San Antonio, Texas 78209

/s/ Lawrence Morales II
Lawrence Morales II