UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

JOSE MONTES JR.,                    §
                                    §
          Plaintiff,                §
VS.                                 §    CIVIL ACTION NO. 5:14-CV-193
                                    §
TIMEKEEPERS, INC., *et al,*         §
                                    §
          Defendants.               §

## MEMORANDUM & ORDER

Jose Montes, Jr., a former "gate guard/security officer,"[1] has sued Timekeepers, Inc. ("Timekeepers"), Tier One Security, Inc. ("Tier One"), Rabbit Ear Management, Inc. ("Rabbit Ear"), and Shawn R. Fluitt (collectively, "Defendants") under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Montes alleges that Defendants improperly classified him and other similarly situated gate guards as independent contractors exempt from the FLSA's overtime requirements and denied them overtime compensation as a result. One other gate guard, Yolanda Garza, has consented to join as an opt-in plaintiff. *See* Dkt. No. 18.

Montes has moved for conditional certification of an opt-in class and issuance of notice to potential class members. Dkt. No. 19. Defendants responded in

---

[1] With little mention or analysis, Montes combines the terms "gate guards" and "security officer" into "gate guard/security officer" so as "to avoid any confusion." Dkt. Nos. 1 at 1; 19 at 1. He does so on the basis that "Defendants' written policies and procedures use [the terms] interchangeably." *Id.* Montes does not point to any such written policies and procedures. Instead, the exhibit purportedly taken from Defendants' website references "gate guarding" and lists job responsibilities particularly tied to a gate. *See* Dkt. No. 19-5 (listing responsibilities as "[c]heck in and out all vehicles entering or exiting the ranch or location on the Vehicle log" and "[g]ate is to be closed at all time and immediately after allowing entry/departure"). In addition, the job application provided to the Court specifically lists "Position(s) applying for: Gate Guard." Dkt. No. 19-4 at 3. The combination of these jobs invites confusion, rather than avoids it. Accordingly, the Court will refer to guards or gate guards.

opposition (Dkt. No. 26) and also moved to strike certain evidence submitted by Montes and objected to his discovery request, proposed notice, and proposed consent (Dkt. No. 25).  The Court set a briefing schedule on April 1, 2015, and the motions are now fully briefed.

Based on the parties' filings and the applicable law, the Court **GRANTS IN PART AND DENIES IN PART** Montes' motion for conditional certification (Dkt. No. 19) and Defendants' Motion (Dkt. No. 25).  The Court conditionally certifies a class and orders notice issued to the potential class of all Level 3 gate guards who privately entered into agreements with Tier One Security, Inc., or Rabbit Ear Management, Inc., at any time from December 2, 2011 to the present, and were classified as independent contractors.  Within fourteen days, Defendants must provide Montes with names and addresses of the class members.  By that same date, the parties must submit a proposed notice and consent form for the Court to review, and notify the Court concerning any disputed language, supported by citations to relevant legal authorities.

## I.   BACKGROUND

Three companies and one individual are named as defendants in this action. Timekeepers and Tier One provide security and monitoring services in the oil and gas industry and contract with gate guards, albeit at different "Levels."  Dkt. No. 26-2 at 6, 7.  Rabbit Ear is a management company responsible for overseeing the operations of Timekeepers and providing services for Tier One; it does not directly contract with gate guards.  *Id.*  Timekeepers contracts with Level 2 guards, while

Tier One requires its guards to be Level 3.  Level 3 guards have more stringent training requirements than Level 2, including more classroom training and completion of firearm qualifications.  Dkt. No. 26 at 2.  Unlike Level 2 guards, a Level 3 guard can carry a firearm.  *Id.* at 8.  Montes alleges in his Complaint that Rabbit Ear, Tier One, and Timekeepers are owned and managed by the same individual, Defendant Shawn R. Fluitt.  Dkt. No. 1 at 2.

Montes claims that Defendants jointly employed him and other gate guard who were responsible for "checking in and out all vehicles entering or exiting the work site."  Dkt. No. 19-1, at 3; Dkt. No. 1 at 3.  He further alleges that he and other gate guards worked in excess of forty hours per week for Defendants, but were not paid overtime for hours worked over forty.  *Id.* at 5.  Instead, they were classified as independent contractors and paid a flat daily rate of approximately $300.  *Id.*  When discussing his employment and the pay practices of his alleged employer, Montes does not distinguish between Defendants in his Complaint or declaration.

Montes originally sought to certify a collective action broadly defined as "all current and former gate guards/security officers employed by Defendants at any time during the three years preceding the filing of this action."  Dkt. No. 1 at 6.  Following Defendants' response, Montes now asks the Court to conditionally certify a collective action comprised of "[a]ll Level 3 gate guards or security officers who privately entered into agreements with Timekeepers, Inc., Tier One Security, Inc., or Rabbit Ear Management, Inc., at any time from December 2, 2011 to the present."  Dkt. No. 28 at 2.  He also asks the Court to issue notice to the class and to

order Defendants to produce certain information relating to the proposed class to facilitate notice.  Dkt. No. 19.

Defendants oppose conditional certification, arguing that:  (1) Montes has not shown that he was employed by Timekeepers; (2) whether security guards are independent contractors or employees requires an individualized determination that is not appropriate for collective action; and (3) Montes is not similarly situated to the proposed class.  Dkt. No. 26 at 4.  Defendants also contend that the proposed class is overbroad, *id.*, and have moved to strike certain evidence supplied by Montes in support of certification (Dkt. No. 25).

## II.  LEGAL STANDARD

Section 216(b) of the FLSA establishes an opt-in collective action.  29 U.S.C. § 216(b).  A plaintiff must affirmatively notify the court of her intention to become a party by opting-in to the action.  *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1212 (5th Cir. 1995).  Notice to potential plaintiffs does not issue unless a court conditionally certifies the case as a collective action.  *See Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170–71 (1989).

To decide whether to authorize notice to similarly situated employees advising them of their rights to opt-in, courts use two methods:  the two-step *Lusardi* approach and the class-action-based *Shushan* approach.  *See generally Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987); *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263 (D. Colo. 1990).  "Most courts, including district courts in this circuit, use the *Lusardi* approach rather than the Rule 23 requirements."

*Corcione v. Methodist Hosp.*, No. 14-CV-160, 2014 WL 6388039, at *2–4 (S.D. Tex. Nov. 14, 2014) (Rosenthal, J.) (collecting cases).

The first *Lusardi* step is to decide whether to issue notice to potential class members, which is often based only on the pleadings and any affidavits that have been submitted. *See Mooney*, 54 F.3d at 1213–14. "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class" that provides potential class members with notice and the opportunity to opt in. *Id.* at 1214.

At this stage, Plaintiff must make a minimal showing that (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those individuals are similarly situated to plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt-in to the lawsuit. *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 801 (S.D. Tex. 2010) (Rosenthal, J.) (citations omitted). To make this showing, there must be some facts or legal nexus that binds the claims together so that hearing the cases collectively promotes judicial efficiency. *Id.* "A court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005); *see also Barron v. Henry Cnty. Sch. Sys.*, 242 F. Supp. 2d 1096, 1104 (M.D. Ala. 2003) ("[T]he mere fact that violations occurred cannot be enough to establish similarity, as that would not ultimately be sufficient to establish a pattern and practice without a showing

that the violations were more than sporadic occurrences.").   Once the Court conditionally certifies the class, potential class members are given notice of the pending action and the opportunity to opt-in, and the case proceeds through discovery as a collective action. *Mooney*, 54 F.3d at 1214.

At the second stage of the *Lusardi* analysis, which typically occurs after the close of discovery, defendants may move to decertify the class. *Id.* At that point, the court factually determines whether the employees are similarly situated. *Id.* If so, the collective action proceeds.   Neither the first nor second stage is an opportunity for the court to decide the merits by deciding factual disputes or making credibility determinations.

## III.   ANALYSIS

This action is at the notice stage of the *Lusardi* analysis.   Therefore, Montes bears the burden of showing that putative class members are "similarly situated" to him.   In support of conditional certification, he submitted his own declaration along with several attachments purporting to be a job description for gate guards, a weekly work schedule, and a job application. *See* Dkt. No. 19-1, Exhs. A–C.   Montes also provided a print-out purportedly showing portions of Defendants' website.   Dkt. No. 19-5.

Defendants object that many of the statements in Montes' declaration are "conclusory and impermissibly vague statements, without proper predicate . . . ." Dkt. No. 25 at 2–3.   Defendants further contend that the job description is inadmissible hearsay, and the website print-out is unauthenticated. *Id.* at 3–4.

Accordingly, before the Court determines whether Montes is similarly situated to the proposed class, it must first address Defendants' Motion to Strike (Dkt. No. 25). *See Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 760 (N.D. Tex. 2013) (analyzing evidentiary objections before turning to the similarly situated analysis).

## A.    Evidentiary Standard Applied at Notice Stage

"Although the Fifth Circuit has not spoken definitively on the issue, most district courts agree that affidavits submitted at the notice stage of class certification need not be in a form admissible at trial." *Pacheco v. Aldeeb*, No. 5:14-CV-121, 2015 WL 1509570, at *4 (W.D. Tex. Mar. 31, 2015) (citing *Lee*, 980 F. Supp. 2d at 760); *see also McKnight*, 756 F. Supp. 2d at 803 ("It is not appropriate at [the notice stage] to require the plaintiffs to present evidence that would be required to survive a motion for summary judgment."). To hold otherwise "'would defeat the purpose of the two-stage analysis,' since the first stage sets a purposefully low bar that typically results in conditional class certification." *Id.* (quoting *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 368 (E.D. Tenn. 2006)).

Although the evidence Montes puts forth at this early stage need not be admissible at trial, the allegations in his declaration must be based on personal knowledge. *See McCloud v. McClinton Energy Grp., L.L.C.*, No. 7:14-CV-120, 2015 WL 737024, at *4 (W.D. Tex. Feb. 20, 2015) (collecting cases). "Personal knowledge can include inferences and opinions, so long as they are grounded in personal observation and experience." *Id.* (quoting *United States v. Cantu*, 167 F.3d 198, 204 (5th Cir. 1999)).

Here, Montes avers that his declaration is "based upon [his] personal knowledge." Dkt. No. 19-1, ¶ 1. He states that he worked for Timekeepers, Tier One, Rabbit Ear, and Shawn Fluitt from May 2011 to November 2013 as a "gate guard/security officer." *Id.* ¶ 2; *see also* Dkt. No. 1 at 3 (alleging in his Complaint that he was jointly employed by Defendants). He does not specify whether he worked as a Level 2 or Level 3 gate guard, though Defendants have provided evidence that he was contracted as a Level 3 guard with Tier One. *See* Dkt. No. 26-2 at 6. After November 2013, Defendants allegedly promoted Montes to supervisor where he "observed other gate guards/security officers work a similar schedule." Dkt. No. 19-1, ¶ 5. Montes does not specify whether the guards he observed were Level 3 or Level 2, nor does he indicate if they too were jointly employed by all Defendants. Rather, the only evidence he provided concerning his supervisory role is the job description that he received during his employment, which bears the heading of Rabbit Ear and lists "TITLE:  Field Supervisor – Tier One Projects." Dkt. No. 19-2.

Based on these averments and the evidence provided in support, it is reasonable to infer that Montes has personal knowledge of the policies regarding overtime pay, as well as the work schedules and duties of gate guards working on Rabbit Ear and Tier One projects. *See Nguyen v. Versacom, LLC*, No. 3:13-CV-4689, 2015 WL 1400564, at *3–4 (N.D. Tex. Mar. 27, 2015). However, Montes does not state, and provides no evidence to support the conclusion, that he supervised or was aware of the work schedules or pay practices of any Level 3 gate guards

working on Timekeepers' projects.  To the extent his declaration can be construed to include such Level 3 gate guards at Timekeepers, the Court disregards such averments.  Defendants' objections to Montes' declaration on the grounds that he lacks personal knowledge and that his declaration is speculative are otherwise overruled.

Defendants also object to the job description that Montes asserts he received during his employment, which he attached to his declaration.  *See* Dkt. No. 19-2, Ex. A.  Defendants complain that the document is hearsay.  Dkt. No. 25 at 2.  As explained above, however, there is a lower evidentiary standard applied at this preliminary stage.  Without commenting on whether the document contains hearsay, Defendants' objection is overruled since the Court could consider such evidence even if it is hearsay.  *See Castillo v. Alkire Subway, LP.*, No. 08-CV-2658, 2009 WL 9529354, at *5 (S.D. Tex. Apr. 30, 2009) (refusing to strike evidence in support of conditional certification because of defendants' contention that they contain hearsay); *White*, 236 F.R.D. at 368 ("Accordingly, the Court will not strike portions of the affidavits . . . because they contain inadmissible hearsay.")

Next, Defendants object to an exhibit Montes has attached to his declaration entitled "Gate Guards & Video Monitoring Contactor [sic] Opportunities."  Dkt. No. 19-5.  The exhibit contains the logos of Timekeepers and Tier One and provides "basic information regarding gate guarding" including: responsibilities for gate guards, materials "supplied by Timekeepers," materials expected to be supplied by

the gate guard, and gate guards' job responsibilities.  *Id.*  Defendants contend that the printout should not be considered because Montes fails to authenticate it.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." FED. R. EVID. 901(a).  The Fifth Circuit has made clear that this "is not a heavy burden, and circumstantial evidence or testimony by a knowledgeable witness can be sufficient." *Thompson v. Bank of Am. Nat. Ass'n*, --- F.3d ----, No. 14-10560, 2015 WL 1810738, at *3 (5th Cir. Apr. 21, 2015) (citing *United States v. Barlow*, 568 F.3d 215, 220 (5th Cir. 2009)).  If an "exhibit purport[s] to represent an electronic source, such as a website . . ., testimony by a witness with direct knowledge of the source, stating that the exhibit fairly and fully reproduces it, may be enough to authenticate." *Id.* (citing *Osborn v. Butler*, 712 F. Supp. 2d 1134, 1146–47 (D. Idaho 2010)).

Here, Montes responded to Defendants' objection with a declaration from one of his attorneys, Allison Sarah Hartry.  *See* Dkt. No. 29-1.  Ms. Hartry states under penalty of perjury that on February 27, 2015, she visited the website, http://www.timekeeperssecurity.com/gate-guards/contactor-opportunities/       and captured the contents of the webpage by creating a portable document file ("PDF"). Dkt. No. 29-1.  She avers that the exhibit attached to Montes' motion for conditional certification "is a true and correct copy of the Adobe PDF file that I created on February 27, 2015, and accurately depicts the contents of the webpage described above that I observed on February 27, 2015." *Id.*  Based on this declaration, the

Court finds that the website printout is sufficiently authenticated since a reasonable juror could find that the printout is what it is purported to be. *See Osborn*, 712 F. Supp. 2d at 1146 (finding a website properly authenticated where a knowledgeable witness' affidavit "explains that he printed the website, gave the website address, and represented that it had not been altered or changed from the form maintained at the website address"). Accordingly, Defendants' objection is overruled.[2]

### B.    Motion for Conditional Certification

The Court now addresses Montes' motion for conditional certification and examines whether aggrieved individuals exist who are similarly situated to Montes and who want to opt-in to the lawsuit. *See McKnight*, 756 F. Supp. 2d at 801.

#### 1.    Existence of Other Aggrieved Individuals

The first element requires Montes to "show that it is reasonable to believe that there are other aggrieved employees who were subject to an allegedly unlawful policy or plan." *Villarreal v. St. Luke's Episcopal Hosp.*, 751 F. Supp. 2d 902, 916–17 (S.D. Tex. 2010) (citations omitted). The test for this element is "much more lenient" than the similarly-situated analysis. *Id.*

Montes provides the Court with his declaration in support of his assertion that there were other non-exempt, aggrieved individuals who worked more than forty hours in a week but were not paid overtime. *See* Dkt. No. 19-1. In that declaration, he avers that while working as a gate guard, he was classified as an

---

[2] Since the Court finds that the printout meets the requirements of FRE 901, it need not decide whether exhibits must be authenticated at the conditional certification stage or whether a more relaxed standard should be applied.

independent contractor and not paid time-and-one-half for hours worked over forty per week, even though he "routinely worked more than forty hours a week." *Id.* at ¶¶ 3–5. Based on his personal knowledge, Montes states that other gate guards were – like him – paid a flat daily rate of approximately $300, classified as independent contractors, and not paid overtime for hours worked over forty. *Id.* at ¶¶ 1, 5, 8.

In support of the contention that other gate guards worked over forty hours per week, Montes avers that he personally observed the work schedule of other gate guards while acting as a supervisor, *id.* at ¶ 5, and he provides the Court a spreadsheet reflecting a work schedule for the week of July 12, 2014, Dkt. No. 19-3. The spreadsheet lists approximately twenty-five individuals' names, and below each name states "6a-6p." Dkt. No. 19-3. Several of the names are listed for four or even five consecutive days. *Id.* Montes states that this spreadsheet illustrates that "many gate guard/security officers are scheduled to work at least four or five twelve-hour shifts" and numerous other schedules represent the same scheduling practice. Dkt. No. 19-1, at ¶ 8. Defendants have put forth evidence stating that all guards working on Tier One projects must be Level 3. Dkt. No. 26-2 at 3. Based on this evidence, it is reasonable to conclude that other Level 3 gate guards work over forty hours in a week.

In support of the contention that other gate guards are classified as independent contractors and not paid overtime for hours worked over forty, Montes directs the Court to what he describes is a job application for gate guards. *Id.* ¶ 9;

Dkt. No. 19-4.  The document is entitled "Contractor Application" and bears Tier One's name and logo.  Dkt. No. 19-4, at 1.  The application asks the applicant to "[p]lease check if you understand this is a 1099 contact [sic] position."  *Id.* at 3.[3]  Montes also notes that the supervisor's job description provides that supervisors on Tier One projects are responsible for "[s]upervis[ing] the activities of contractors," which Montes asserts is a reference to gate guards.  Dkt. No. 19 at 8; Dkt. No. 19-2.  Furthermore, in Defendants' Answers, they acknowledge that "Plaintiff and others referenced in Plaintiff's Complaint are all independent contractors."  Dkt. Nos. 13 at 4; 14 at 4; 15 at 4; and 16 at 4.  The Court finds that Montes has shown that it is reasonable to believe that there are other aggrieved Level 3 gate guards classified as independent contractors.

### 2.    Whether Montes Is Similarly Situated

The parties dispute whether Montes is similarly situated to other aggrieved individuals to warrant issuing notice of a collective action.  This second element requires the parties to "demonstrate a reasonable basis for the allegation that a class of similarly situated persons exists."  *Heeg v. Adams Harris, Inc.*, 907 F. Supp. 2d 856, 862 (S.D. Tex. 2012) (Rosenthal, J.).  "Complete uniformity is not necessary."  *Id.*; *see Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 996 (E.D. Tex. 2011) ("[T]he relevant inquiry is whether the potential class members performed the same basic tasks and were subject to the same pay

---

[3] A 1099 employee is an independent contractor or a subcontractor.  *See Abdur-Rahim v. Amerom, Inc.*, No. 13-CV-2105, 2013 WL 6078955, at *1 (S.D. Tex. Nov. 19, 2013) (noting that "the hiring entity makes the initial classification . . . whether it be a W–2 for employees or a 1099 for independent contractors").

practices.").   Certification should nonetheless be denied "'if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice.'"   *McKnight*, 756 F. Supp. 2d at 801 (quoting *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005)).

### a. Montes' Alleged Joint Employment

First, Defendants claim that Montes cannot be similarly situated with any class members at Timekeepers because he was not employed by Timekeepers.  Dkt. No. 26.  In support, Defendants provide declarations from Tier One and Rabbit Ear employees stating that Montes and the opt-in plaintiff Yoland Garza contracted with Tier One as Level 3 guards.  Dkt. No. 26-2 at 2, 6.  Defendants also provide a declaration from a Rabbit Ear employee responsible for the operations of Timekeepers who unequivocally states that "Timekeepers did not contract with Jose Montes, Jr. nor Yolanda Garza for guard services and Timekeepers did not pay them for guard services."  *Id.* at 8.

Montes responds that he has sufficiently alleged in his Complaint that all Defendants, including Timekeepers, are joint employers and that a determination regarding whether Defendants are joint employers is inappropriate for the Court to make at this stage.  Dkt. No. 28.

"To be bound by the requirements of the [FLSA], one must be an 'employer.'"  *Donovan v. Grim Hotel Co.*, 747 F.2d 966, 971 (5th Cir. 1984) (citing 29 U.S.C. §§ 206–07).  An employer is broadly defined as "any person [or corporation] acting directly or indirectly in the interest of an employer in relation to an employee."  29

U.S.C. § 203(a), (d). "Furthermore, the FLSA contemplates that two or more employers may stand in relation to an employee at the same time." *Howard v. John Moore, L.P.*, No. 13-CV-1672, 2014 WL 5090626, at *3 (S.D. Tex. Oct. 9, 2014) (citing 29 C.F.R. § 791.2). "[I]f the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the act." 29 C.F.R. § 791.2.[4]

At the conditional certification stage, "[c]ourts have held that it is appropriate to issue notice to potential class members when there is some evidence that employers are related, delaying the determination whether the employers actually have a joint-employment relationship." *McKnight*, 756 F. Supp. 2d at 806 (quoting *Manning v. Goldbert Falcon, LLC*, No. 08-CV-3427, 2010 WL 3906735 (D.N.J. Sept. 29, 2010)). "In instances where a motion for conditional certification involves a potential class of employees that worked for separate, but related, employers, courts have reserved consideration of whether the separate employers are joint employers for a final, stage two determination." *Id.*; *see also Aguilar v. Complete Landsculpture, Inc.*, 3:04-CV-0776, 2004 WL 2293842, at *3 (N.D. Tex. Oct. 7, 2004) (explaining that a court can conditionally certify a class and "determine at a later time whether defendants are joint employers"). "Importantly, lower courts have found that the FLSA's definition of employer is so broad that the

---

[4] Courts apply an "economic reality" test to determine if an individual or an entity is an "employer" under the statute. *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012).

case may proceed even where there exist threshold questions regarding employment status." *Lang v. DirecTV, Inc.*, No. 10-CV-1085, 2011 WL 6934607, at *3 (E.D. La. Dec. 30, 2011).  Thus, the Court need not decide at this juncture the exact nature of the employment relationship here.

Although the Court will not decide whether Timekeepers is liable as a joint employer, it still must decide whether notice should be issued to its workers.  *See Lucas v. BMS Enterprises, Inc.*, No. 3:09-CV-2159, 2010 WL 2671305, at *3 (N.D. Tex. July 1, 2010) ("Whether class members are similarly situated . . . could be affected by the fact that they had different employers.").   Central to that determination is the job tasks and pay practices of the proposed class members.

Defendants identify several differences between the guards contracted by Tier One and guards contracted by Timekeepers, including:  (1) the level of training required – Tier One required guards to be at a Level 3 and be certified in firearms, while Timekeepers only required a Level 2 and no firearm certification; (2) Timekeepers contracts with couples for twenty-four hour shifts, while Tier One contracts for twelve-hour shifts; and (3) Timekeepers requires its guards to have recreational vehicles to provide guard services, whereas Tier One does not.  Dkt. No. 26 at 10–1; Dkt. No. 27 at 1–2.

The crux of the job responsibilities and duties for gate guards at Timekeepers and Tier One appear similar:  "check in and out all vehicles entering or exiting" the assigned worksite.  Dkt. Nos. 19-5 at 5; 19-1 at 2.  In assessing whether gate guards are similarly situated, one court in this district recognized that "the fact that

plaintiffs and prospective class members . . . did not perform exactly the same duties does not prevent them from being considered similarly situated." *Abdur-Rahim v. Amerom, Inc.*, No. 13-CV-2105, 2013 WL 6078955, at *3 (S.D. Tex. Nov. 19, 2013). In that case, the court determined plaintiffs' affidavits stating that they both shared the same job title and worked with the same company "suggests that they have similar job duties and obligations." *Id.*

Here, the alleged FLSA violation – namely misclassification – implicates gate guards at both companies who are classified as independent contractors. *See id.* ("The alleged failure to pay overtime compensation to all security guards is a common policy which, if true, uniformly victimized the putative class."). In addition, Timekeepers and Tier One are apparently managed by the same company (Rabbit Ear), allegedly owned by the same individual (Shawn Fluitt), advertise for jobs under the logo of one another, and contract for guards who perform similar but not identical tasks. *See McKnight*, 756 F. Supp. 2d at 806 (finding there was sufficient evidence that strip clubs were related when they were owned by a common holding company, shared executives and other administrative staff, advertised together, and had their employees sign policies that listed the various companies).

Nonetheless, Montes proposes a class consisting of only Level 3 gate guards, yet provides the Court with no basis to believe that Level 3 gate guards operate at Timekeepers and work over forty hours in a week. He has not alleged it in his Complaint nor competently referenced it in his declaration. Thus, Montes has

failed to show that all members of the class, namely Timekeepers' guards, are similarly situated.  Montes further provides no basis to show that there are any Timekeepers employees who may be interested in opting in.[5]  Based on the record before the Court, notice is inappropriate to Timekeepers' gate guards.  Defendants' objection to the inclusion of Timekeepers' guards in the proposed class is therefore sustained.

### b.  The Employee v. Independent Contractor Analysis

Next, Defendants contend that certification should be denied because the determination of whether individual gate guards are independent contractors or employees is highly individualized and ill-suited to collective action.  Dkt. No. 26 at 6–7.  In support, Defendants point to the multi-factored economic realities test that courts use to determine whether a worker is an employee or independent contractor.  *See id.* (citing *Andel v. Patterson-UTI Drilling*, 280 F.R.D. 287, 289 (S.D. Tex. 2012)).[6]

The Court is unpersuaded that FLSA cases involving alleged misclassification of independent contractors are inherently ill-suited to collective action treatment, particularly since "many courts have granted conditional certification in FLSA cases involving disputes over whether workers were

---

[5] "Others' interest in joining the litigation is relevant to deciding whether or not to put a defendant employer to the expense and effort of notice to a conditionally certified class of claimants in a collective action." *McKnight*, 756 F. Supp. 2d at 807 (quotation omitted).

[6] The economic realities test examines the following five, non-exclusive factors to determine whether a worker is an employee or an independent contractor:  "(a) the permanency of the relationship; (b) the degree of control exercised by the alleged employer; (c) the skill and initiative required to perform the job; (d) the extent of the relative investments of the worker and the alleged employer; and (e) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer.'" *Andel*, 280 F.R.D. at 290 (quoting *Thibault v. Bellsouth Telecomms., Inc.*, 612 F.3d 843, 846 (5th Cir. 2010)).

misclassified as independent contractors." *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 470 (S.D. Tex. 2012) (collecting cases).  Indeed, several courts have conditionally certified classes of gate guards alleged to have been improperly classified. *See, e.g.*, *Abdur-Rahim*, 2013 WL 6078955, at *3 ("Plaintiffs are similarly situated with other security guards, and the court finds that plaintiffs have met their burden for conditional certification."); *Gonzalez v. Tier One Sec., Inc.*, No. 12-CV-806, 2013 WL 1455587, at *2 (W.D. Tex. Apr. 8, 2013) ("Defendants' argument that their classification of the security guards as independent contractors (and not employees) wholly dictates that conditional certification is inappropriate is without merit.").

Moreover, the Court does not find that the economic reality test is appropriately applied at the conditional certification stage, since it would require the Court to improperly delve into the merits of Montes' claim. *See Vasquez v. Am. Bor-Trench, Inc.*, No. 4:12-CV-3181, 2014 WL 297414, at *3 (S.D. Tex. Jan. 23, 2014) ("Courts in this district have generally held that the economic realities test is not appropriate for determination at the notice stage of FLSA class certification."); *Heeg*, 907 F. Supp. 2d at 862 (noting that courts in this district "have typically declined to apply the economic realities factors or other individualized analyses at the conditional certification stage"); *Walker*, 870 F. Supp. 2d at 471 (same); *Meseck v. TAK Commc'ns, Inc.*, No. 10-CV-965, 2011 WL 1190579, at *6 (D. Minn. March 28, 2011) ("Courts in this district and elsewhere consistently hold that such potential defenses and individualized inquiries[, such as the economic realities test,]

. . . are more appropriately addressed through a decertification motion.”).
Accordingly, Defendants' second basis for denying conditional certification is denied.

### c.   Montes' Similarity with Other Level 3 Gate Guards

Defendants point to several ways in which Montes is not similarly situated to
the proposed class.  Defendants first contend that Montes is not similarly situated
to guards contracting with Timekeepers.  The Court agrees because, as described
above, Montes proposes a class consisting only of Level 3 guards, but does not allege
that any Level 3 guards work for Timekeepers, that he has supervised any Level 3
guards at Timekeepers, or that he is in any way familiar with the pay practice of
Level 3 guards at Timekeepers.  Thus, guards contracting with Timekeepers are
outside of the scope of the class.

Next, Defendants contend that Montes is not similarly situated because he
contracted directly with Tier One, whereas other guards contract with Tier One
through third parties, such as police departments and sheriff offices.  In response,
Montes has “clarif[ied]” the proposed class to include only those guards who
“privately entered into agreements with” Defendants.  Dkt. No. 28 at 2.  Montes
asserts that gate guards who contract directly with third-party police and sheriff
departments are not part of the proposed class.  In light of the change in class scope
and Montes' clarification, the Court finds that Defendants' concern is not valid.

Defendants also note that guards working for different clients or at different
locations have different job duties, such as different procedures for addressing
incidents of entry of illegal aliens, different gate check-in procedures, and different

requirements to track individuals on a ranch.  Dkt. Nos. 26 at 11; 26-1 at 1.  Class certification should be denied if "job duties among putative class members vary significantly."  *Heeg*, 907 F. Supp. 2d at 862.  The Court "need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated."  *Abdur-Rahim*, 2013 WL 6078955, at *2.

Montes has alleged, and the record provides a reasonable basis to conclude, that he and other Level 3 gate guards were tasked with similar job requirements, namely checking in and out all vehicles entering or exiting the work site, and they were not paid overtime according to the same practice of classifying gate guards as independent contractors.[7]  Although there are variations in Level 3 gate guards' job duties, such differences are not significant.  *See Prater v. Commerce Equities Mgmt. Co.*, No. 07-CV-2349, 2007 WL 4146714, at *7–8 (S.D. Tex. Nov. 19, 2007) ("Collective-action treatment is proper for misclassification claims when the employees have essentially the same basic job responsibilities.").  Accordingly, the Court finds that Montes is similarly situated with other Level 3 gate guards who privately entered into agreements with Tier One or Rabbit Ear.

### 3.    Other Individuals' Desire to Opt in

Lastly, the parties dispute whether Montes has shown that other aggrieved individuals want to opt in.  Courts in this district do not agree on what is required to meet this element.  Some have denied certification where only one affidavit was provided, reasoning that "a plaintiff must do more than show the mere existence of

---

[7] In so finding, the Court rejects Defendants' argument that there has been an insufficient showing of a generally applicable rule, policy, or practice that applies to Montes and the putative plaintiffs.

other similarly situated persons, because there is no guarantee that those persons will actually seek to join in the lawsuit." *Morales v. Thang Hung Corp.*, No. 4:08-CV-2795, 2009 WL 2524601, at *3 (S.D. Tex. Aug. 14, 2009) (citation omitted)); *Simmons v. T–Mobile,* No. 06-CV-1820, 2007 WL 210008, at *9 (S.D. Tex. Jan. 24, 2007) ("The Court concludes that a showing is necessary that at least a few similarly situated individuals seek to join the lawsuit.  Others' interest in joining the litigation is relevant to deciding whether or not to put a defendant employer to the expense and effort of notice of a conditionally certified class of claimants in a collective action.").  Other courts have determined that plaintiffs need not present any evidence that potential opt-in plaintiffs desire to opt-in.  *See Walker*, 870 F. Supp. 2d at 471–72 (collecting cases).  Courts tend to agree, however, that notice "from potential class members affirming their intention to join the suit are ideal" for this element.  *Morales*, 2009 WL 2524601, at *3; *Simmons*, 2007 WL 210008, at *9.

Here, Montes states in his declaration that he "strongly suspect[s] that many of the other gate guards/security officers for Defendants would also be interested in joining this lawsuit if they received notice and were given an opportunity to participate."  Dkt. No. 19-1 at 3.  He does not offer any basis for how he came to form this "strong suspicion" and whether there is a reasonable basis for it.  *See Goldstein v. Children's Hosp. of Philadelphia*, No. 10-CV-01190-DS, 2012 WL 5250385, at *3 (E.D. Pa. Oct. 24, 2012) (acknowledging declarant's belief about others concerning conditional certification, but noting that the declarant provided no basis for arriving at those beliefs or basis for the court to credit them).  Nor does

he provide any basis for the Court to find that Timekeepers gate guards are interested in joining.

Nonetheless, Yolanda Garza's opt-in notice shows there is at least some interest on the part of other Level 3 gate guards (employed by Defendants other than Timekeepers) to participate in this suit. Montes has also put forth evidence in the form of a gate guard work schedule that suggests other Level 3 gate guards worked over forty hours in a week and were classified as independent contractors. The Court finds such evidence minimally sufficient with respect to Level 3 gate guards contracted by Defendants other than Timekeepers.

### C.    Class Being Certified

This Court "has the power to modify an FLSA collective action definition on its own." *Walker*, 870 F. Supp. 2d at 472 (citation omitted); *Kaluom v. Stolt Offshore*, 474 F. Supp. 2d 866, 873–74 (S.D. Tex. 2007) ("[W]hile the Court agrees that Plaintiff's proposed class may currently be too broad, it does not agree that this overbreadth defeats Plaintiff's Motion for Notice. Rather, the just result is to allow notice, but to limit discovery and notice to only those workers who are similarly situated."). Montes meets the requirements of the *Lusardi* analysis, but only as to Level 3 gate guards (not security officers) employed by Defendants other than Timekeepers. Thus, the Court concludes that it appropriate to exercise its power to modify the collective action definition and conditionally certify a class consisting of:

> All Level 3 gate guards who privately entered into agreements with Tier One Security, Inc., or Rabbit Ear Management, Inc., at any time from December 2, 2011 to the present, and were classified as independent contractors.

The Court concludes that a three-year notice period is appropriate since "[t]he well-established precedent of the Southern District of Texas indicates that, where a plaintiff alleges a willful FLSA violation, notice is proper for potential class members employed by the defendant within the full three-year period; FLSA plaintiffs are not required to prove willfulness prior to discovery." *Walker*, 870 F. Supp. 2d at 472 (quotation marks and citation omitted).  "The Court also agrees with Defendant that the class should be limited to potential Plaintiffs who were classified as independent contractors; otherwise, the potential Plaintiffs would not all be subject to the same policy or practice." *Id.*

### D.    Discovery Requested

Montes requests the names, last known personal and residential addresses, last known residential and cell phone numbers, personal and work e-mail addresses, last four digits of their Social Security Number, and dates of work of all gate guards who were classified as independent contractors for the past three years. At the conditional certification stage, discovery of the names and addresses of potential class members is appropriate and a "routine component of court-facilitated notice in FLSA collective actions." *Behnken v. Luminant Min. Co., LLC*, 997 F. Supp. 2d 511, 526 (N.D. Tex. 2014); *Hoffmann–La Roche*, 493 U.S. at 170 ("The District Court was correct to permit discovery of the names and addresses of the discharged employees.").

The Court agrees with Defendants that Montes' request is too broad since Montes provides provided no basis for disclosing such personal information at this

point.  *See Lopez, v. Bombay Pizza Co.*, No. 11-CV-4217, 2012 WL 5397192, at *3 (S.D. Tex. Nov. 5, 2012) ("[Plaintiff] has not demonstrated any need for the additional information at this stage of this case. Thus, defendants must produce only the names and addresses of putative class members . . . ."); *Behnken*, 997 F. Supp. 2d at 526 (concluding that "the need for compelled disclosure of prospective class members' telephone numbers is outweighed by their privacy interests, and that there is no apparent reason to conclude that sending a letter to a person's last known address will be inadequate").  If, however, notices are returned to Montes' counsel as undeliverable, he may request an order from the Court requiring the production of other information for these individuals.  *See Flowers v. MGTI, LLC*, No. 11-CV-1235, 2012 WL 1941755, at *5 (S.D. Tex. May 29, 2012).

Accordingly, Defendants Tier One and Rabbit Ear must, within fourteen days of the entry of this Order, provide Montes the full names and last known mailing addresses for all Level 3 gate guards who privately entered into agreements with Tier One or Rabbit Ear since December 2, 2011, and were classified as independent contractors.  The information should be verified as complete and accurate by one of Defendants' corporate representatives.  Montes' request to send a reminder notice halfway through the opt-in period is denied.

### E.  Proposed Notice

Defendants raise several objections to Montes' proposed notice.  Generally, a plaintiff should be allowed to use his preferred language in drafting the notice, absent reasonable objections.  *Vargas v. Richardson Trident Co.*, No. 09-CV-1674,

2010 WL 730155, at *11 (S.D. Tex. Feb. 22, 2010).   However, the Court has discretion regarding the form and content of the notice to ensure that potential plaintiffs receive accurate and timely notice about the pending collective action. *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169–70 (1989).

Both parties ask the Court to order them to meet, confer, and jointly prepare an accurate and balanced notice.   The Court wholeheartedly agrees with the parties and hereby **ORDERS** the parties to confer regarding the content of the notice to be sent out to the putative class members in light of the Court's determinations outlined below.   The parties should notify the Court within fourteen days of any disputes relating to the terms of the notice that remain unresolved, and the parties should provide by that date an amended proposed notice that conforms with this Order.   Should the parties not reach complete agreement on the notice, they should identify the areas of disagreement and provide legal support for their respective positions.[8]

In resolving any disputes regarding language of the proposed order, the Court echoes Judge Miller's sentiments that a "proposed notice should merely provide background information and an opportunity to join the class, with complete contact data for both parties' counsel, but the notice should not serve as tacit encouragement of other litigation."   *Lopez*, 2012 WL 5397192, at *3.   The Court further notes that the notice provided to it should conform to the following:

**(1)** The notice must inform potential class members that they may contact any attorney of their choosing to discuss the case.   *See Tolentino v. C & J Spec-Rent*

---

[8] This same procedure applies to the consent-to-join form as well.

*Servs. Inc.*, 716 F. Supp. 2d 642, 655 (S.D. Tex. 2010); *Yaklin v. W-H Energy Servs., Inc.*, No. 07-CV-422, 2008 WL 1989795, at *4 (S.D. Tex. May 2, 2008); *Moran v. Ceiling Fans Direct, Inc.*, No. 06-CV-0813, 2006 WL 2868939, at *2 (S.D. Tex. Oct. 5, 2006).

(2) Class members who wish to opt-in may return their opt-in forms to counsel for Montes.  Before filing any executed notice of consent form with the Court, Montes' counsel shall redact all personal identifying information in accordance with Southern District of Texas General Order 2004-11 and Federal Rule of Civil Procedure 5.2.

(3)  The notice need not include information on the possibility of having to pay court costs.  As a court in this district recently recognized, "the general authority on this question is decidedly split" on whether notice must apprise potential opt-in plaintiffs that they may be liable for court costs.  *See Reyes v. Quality Logging, Inc.*, No. 5:14-CV-21, 2014 WL 5100230, at *3 (S.D. Tex. Oct. 10, 2014).  While some courts have found that "[b]eing made aware of the possibility of being held liable for [defendant's] costs of litigation is necessary information for potential plaintiffs to make an informed decision about whether to opt-in as a plaintiff," *Heaps v. Safelite Solutions, LLC*, 2011 WL 1325207, at *8 (S.D. Ohio Apr. 5, 2011), other courts have found that such language is "unnecessary and potentially confusing," *Sexton v. Franklin First Fin., Ltd.*, No. 08-CV-04950, 2009 WL 1706535, at *12 (E.D.N.Y. June 16, 2009), particularly given the "remote possibility" that costs will be other than *de minimus*, *Guzman v. VLM, Inc.*, 2007

WL 2994278, at *8 (E.D.N.Y. Oct. 11, 2007).  The Court agrees with the reasoning in *Reyes* and finds that such information is not necessary.  *Reyes*, 2014 WL 5100230, at *3 (noting "the involvement of likely unsophisticated opt-in plaintiffs," and the risk that the "proposed language may have an *in terrorem* effect that disproportionately outweighs the likelihood that these costs will occur to any significant magnitude").

(4)   Montes proposes a forty-five-day opt-in period to submit the consent forms, while Defendants requests thirty days for putative class members to opt-in. Many courts approve a forty-five-day opt-in period, and the Court finds that this is an appropriate amount of time.

(5)   The Court overrules Defendant's objection to the inclusion of language in the Notice of Consent that informs the class members that they agree to be bound by the Contingent Fee Agreement.  The Court finds that such language, at a minimum, alerts class members that a Contingent Fee Agreement exists and allows them the opportunity to then inquire into the terms of the agreement if they so choose.  The Court is mindful that it retains jurisdiction to determine the reasonableness of any contingency agreement entered into by the Plaintiff with counsel, and to determine the adequacy of Plaintiff's counsel.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Montes' motion to conditionally certify a collection action (Dkt. No. 19) and Defendants' motion to strike certain evidence submitted by Montes, together with

objections to his discovery request, proposed notice, and proposed consent (Dkt. No. 25).   The Court conditionally certifies a class of all Level 3 gate guards who privately entered into agreements with Tier One Security, Inc., or Rabbit Ear Management, Inc., at any time from December 2, 2011 to the present, and were classified as independent contractors.  Within fourteen days, the discovery described above must be produced.  With regard to the proposed notice, the Court hereby **ORDERS** the Parties to confer regarding the content of the notice to be sent out to the putative class members, guided by the notice-related rulings made above.  The Parties must submit to the Court a proposed notice or notify the Court of any unresolved disputes regarding the notice by that time.

It is so **ORDERED**.

**SIGNED** this 11th day of May, 2015.

Marina Garcia Marmolejo
United States District Judge